IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


UNITED STATES TRUSTEE,                          No. 3:18-CV-01569-HZ
                                                (No. 3:18-CV-01570-HZ
        Plaintiff-Appellee,                   No. 3:18-CV-01571-HZ)

    v.

HOWARD LAW, P.C., VINCENT                       OPINION & ORDER
HOWARD,

        Defendants-Appellants.


Jonas V. Anderson
Office of the United States Trustee
405 E. 8th Ave.
Suite 1100
Eugene, OR 97401

Joan S. Swyers
United States Trustee Program
Executive Office for US Trustees
441 G Street NW
Room 6150
Washington, DC 20530

      Attorneys for Plaintiff-Appellee


1 – OPINION & ORDER

Nicholas J. Henderson
Motschenbacher & Blattner, LLP
117 SW Taylor St.
Suite 300
Portland, OR 97204

      Attorney for Defendants-Appellants

HERNÁNDEZ, District Judge:

      Appellants-Defendants Howard Law and Vincent Howard ("Howard Defendants") bring this appeal of a bankruptcy court order denying their request for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. For the following reasons, the Court affirms the bankruptcy court's order.

## BACKGROUND[1]

      In 2016, the United States Trustee (UST) filed three cases against Vincent Howard, Howard Law, P.C.,[2] Erik Graeff, and the Law Offices of Erik Graeff. ER 22–40, 42–64, 77–106. The UST alleged that Mr. Howard, Howard Law, Mr. Graeff, and the Law Offices of Erik Graeff failed to adequately represent three Oregon debtors—Cheryl Kay Stites, Kathleen Arthur, and Mary Ann Michiko Roberts—in their bankruptcy actions. *Id.* Specifically, the UST brought charges under five Bankruptcy Code provisions:

(1) 11 U.S.C. § 526(a)(3), prohibiting a debt-relief agency from misrepresenting its services;

(2) 11 U.S.C. § 526(a)(1), prohibiting an agency from failing to perform services it proposed to perform;

(3) 11 U.S.C. § 526(a)(2), prohibiting an agency from advising or counseling a debtor to make a false or misleading statement in bankruptcy documents;

---

[1] Unless otherwise noted, the following facts have been taken from the bankruptcy court's memorandum decision filed March 9, 2018, found in Appellants' Excerpt of Record ("ER"), ECF 6-1, at 245–91.

[2] Vincent Howard was the president and sole shareholder of Howard Law, P.C.

2 – OPINION & ORDER

(4) 11 U.S.C. § 329(a), requiring disclosure of compensation paid during the prepetition
    year; and

(5) 11 U.S.C. § 329(b), permitting a court to require disgorgement of excessive
    compensation paid to a debtor's attorney during that year.

Each of these charges stems from Howard Law's partnership with Morgan Drexen, a

company that provided Howard Law with administrative support and billing services. Together,

Howard Law and Morgan Drexen created a network of attorneys admitted to practice throughout

the United States. At first, Howard Law functioned as the sole "engagement counsel" that

supervised Morgan Drexen. Howard Law then had agreements with "local counsel," who

provided clients with legal services in the states where each client lived. Eventually, some "local

counsel" began working as "engagement counsel," meaning they supervised Morgan Drexen in

exchange for fees and were authorized by Howard Law to access the same pool of available local

counsel. However, each local counsel only had a formal relationship with Howard Law. Clients,

in turn, had an attorney-client relationship with the local counsel who actually provided them

with legal services, and with the engagement counsel whose name appeared on the client's fee

agreement and who received fees and supervised Morgan-Drexen.

While clients did not, in theory, have a customer or client relationship with Morgan

Drexen, the bankruptcy court explained that

> for practical purposes, Morgan Drexen was the heart of the attorney network.
> Clients communicated primarily if not exclusively with Morgan Drexen. If
> necessary, Morgan Drexen would arrange for direct communication between a
> client and local counsel. All fees were paid through Morgan Drexen's accounting
> department. Clients were solicited through advertising created by Morgan Drexen,
> and the enrollment process was handled by Morgan Drexen.

ER 314–15.

Thus, within this framework, there were two categories of Oregon clients whose attorney-

client relationships were at issue in the underlying lawsuit brought by the UST. The first

consisted of Oregon clients of Howard Law. These clients were enrolled in legal services

through Morgan Drexen, submitted payments through Morgan Drexen, and communicated

primarily, if not exclusively, with Morgan Drexen staff. When attorney services were required,

one of Howard Law's local counsel in Oregon performed the services. When these clients

remitted fees to Morgan Drexen, the fees were distributed in part to Howard Law and in part to

local counsel. Howard Law then paid Morgan Drexen for its assistance.

The second category consisted of clients of The Law Offices of Erik Graeff. Erik Graeff

began as local counsel for Howard Law but eventually began working as engagement counsel.

His clients were also enrolled in legal services through Morgan Drexen, submitted payments

through Morgan Drexen, and communicated primarily, if not exclusively, with Morgan Drexen

staff. When attorney services were required, Mr. Graeff ordinarily performed them himself.

However, he could also refer the services to one of Howard Law's "local counsel" in Oregon,

even though he did not have an agreement with any of those attorneys.  When clients remitted

fees to Morgan Drexen, the fees were distributed in part to Mr. Graeff and in part to local

counsel, if any. Mr. Graeff in turn paid Morgan Drexen for its assistance. Morgan Drexen

communicated with Mr. Graeff's clients on letterhead that referenced Howard Law, even though

Howard Law was not involved in the representation.

The UST eventually brought three cases against the Howard Defendants and Graeff

Defendants: *In re Roberts*, *In re Stites*, and *In re Arthur*. [3] The Graeff Defendants entered a

stipulated judgment, which included both injunctive relief and civil penalties, in all three cases.

---

[3] The Court does not see the relevance of Defendants' discussion of *In Re Clements*, a case not
consolidated with those at issue here. In that case, brought by the UST in 2012, Howard
Defendants settled the charges, disgorged the attorneys' fees and costs, and withdrew from
representing Ms. Clements or any other Oregon resident. ER 223–24.

Appellee's Supplemental Excerpts of Record ("SER") 81–126, ECF 14-1. The Howard
Defendants proceeded to trial.

### 1. *In re Roberts*

In 2014, Ms. Roberts signed an agreement with Morgan Drexen for bankruptcy services,
debt-resolution services, and the "legal assistance program" (LAP), "a $50 per month retainer
arrangement that entitled the client to certain limited attorney services unrelated to the debt
resolution and bankruptcy programs." ER 253, 259.[4]

Initially, Morgan Drexen informed Ms. Roberts that she would be represented by The
Law Offices of Erik Graeff. However, before performing any work on Ms. Roberts' case, Mr.
Graeff withdrew from the Morgan Drexen network. After Mr. Graeff withdrew as her attorney,
Ms. Roberts remained represented "through" Morgan Drexen. During this time, it is unclear who
was acting as her counsel. For example, while Morgan Drexen told Ms. Roberts that she would
be represented by James Loy, local counsel for the network, Mr. Loy informed Ms. Roberts that
he was not a bankruptcy attorney and would not represent her. Morgan Drexen then told Ms.
Roberts she would be represented by local counsel Brandon Rennie. Mr. Rennie, however, was
not working as local counsel for the network at that time. Still, Morgan Drexen's paralegals
continued to work on Ms. Roberts' case

Ms. Roberts' file was eventually transferred to Howard Law. At that time, Morgan
Drexen mailed Ms. Roberts a letter, with Mr. Howard's signature, stating that she was "engaged
in bankruptcy services with Howard Law, P.C.," and that Mr. Loy would be her attorney. Again,
Mr. Loy had already informed Ms. Roberts that he would not, in fact, represent her.

---

[4] As noted by the bankruptcy court, Ms. Roberts told Morgan Drexen she had net income of $9
per month after expenses, her son bought groceries for her, and she only wanted bankruptcy
services. Nevertheless, a Morgan Drexen representative told her "it was 'just their procedure' to
have clients complete [] debt consolidated forms" and enrolled her in the LAP program. ER 259.

Eventually, Howard Law found an attorney willing to represent Ms. Roberts. This attorney, Heather Brann, was not a member of Howard Law and entered into a separate agreement with Ms. Roberts. However, Ms. Brann worked with Howard Law paralegals, was invoiced for their services, and was paid by Howard Law for fees and costs related to the Roberts filing. Ms. Brann eventually signed a stipulation for entry of an order of sanctions.

The UST alleged that Mr. Howard and Howard Law violated 11 U.S.C. § 526 and 11 U.S.C. § 329. The bankruptcy court found that both Mr. Howard and Howard Law violated 11 U.S.C. § 526(a)(3) by misrepresenting that Mr. Loy would represent Ms. Roberts in her bankruptcy action. It also found that Howard Law intentionally violated (1) 11 U.S.C. § 526(a)(2) by advising Ms. Roberts to make a false or misleading statement in her bankruptcy documents; (2) 11 U.S.C. § 329(a) by failing to disclose compensation; and (3) 11 U.S.C. § 329(b) by charging excessive compensation for the LAP program, which "had no value" to Ms. Roberts. The court entered a judgment requiring Howard Law to pay $1,983 to the bankruptcy estate of Ms. Roberts and a $5,000 civil penalty. ER 292–93. It also enjoined Howard Law from further violations of 11 U.S.C. § 526(a)(2). *Id.* The court did not, however, impose a remedy against Mr. Howard because it found the violation was not part of a clear pattern and practice of violations.

## 2.  *In re Stites*

Ms. Stites contacted Morgan Drexen in 2007 for debt-resolution services and signed a retainer agreement with Howard Law. That retainer agreement provided, in relevant part, that "Attorneys" would "review and analyze relevant documents to determine [Ms. Stites'] legal rights and remedies pertaining to [her] Debt." SER 335. The agreement also provided notice that Howard Law used "outside companies" to perform some of its services. *Id.*

Ms. Stites remained in the debt-settlement program for five years. While Morgan Drexen sent a number of proposed settlements to local counsel for review, it appears that no attorney acted on any proposed settlement until Ms. Stites had been enrolled in the program for four years. After the debt-settlement program failed to resolve her debt problems, Ms. Stites eventually filed for bankruptcy with Mr. Graeff as engagement counsel, independent of Howard Law. She did not, however, sign a separate fee agreement with Mr. Graeff.

The UST alleged that Mr. Howard and Howard Law violated 11 U.S.C. § 526(a) by misrepresenting the services they were able to perform and failing to perform promised services. ER 34–36. The bankruptcy court found that Howard Defendants did not violate § 526(a) as they "accurately represented that a firm member, Graeff, would provide services" and they did, in fact perform these "promised services, albeit after a significant delay." ER 4. Specifically, "Morgan Drexen communicated with creditors about settlement offers and reviewed documents that she sent in," and Mr. Graeff approved a settlement with Chase in 2011.[5] ER 257. Thus, the bankruptcy court entered judgment in favor of both Mr. Howard and Howard Law.

### 3.  *In re Arthur*

In 2013, Ms. Arthur signed a bankruptcy retainer agreement through Morgan Drexen, purportedly with The Law Offices of Erik Graeff.[6]  Mr. Graeff, however, testified that he did not authorize this agreement. To the contrary, he was not aware of the agreement, or that Ms. Arthur was his client, until nearly two years after the agreement was signed. ER 251, SER 281. Nevertheless, Morgan Drexen billed Ms. Arthur for more than $3,500 in services. SER 51–53, 361–62.

---

[5] Mr. Graeff also "provided limited-scope litigation services [] under a separate agreement in a lawsuit by a debt collector." ER 257.
[6] Despite failing to express any interest in non-bankruptcy services, Ms. Arthur was also enrolled in the LAP.

Over the course of these two years, Morgan Drexen sent Ms. Arthur at least one letter from Graeff Law on letterhead that referenced an "Of Counsel Network of Regional Attorneys" and "Howard Law, P.C., Firm of Counsel, Principal Licensed in California." Ms. Arthur also received and signed a document in which a different lawyer, Brandon Rennie, was identified as "Of Counsel to The Law Offices of Erik Graeff PC." But Mr. Rennie wasn't of counsel to The Law Offices of Erik Graeff; he was of counsel to Howard Law. Mr. Rennie was only involved in Ms. Arthur's representation due to Howard Law's blanket authorization that allowed engagement counsel to use its network of local counsel.

The UST alleged that Howard Defendants violated 11 U.S.C. § 526 by making misrepresentations and failing to provide services. The bankruptcy court ultimately determined that Mr. Howard and Howard Law did not provide any services to Ms. Arthur. Instead, Ms. Arthur retained the Law Offices of Erik Graeff, and the UST failed to establish that Graeff Law's actions could be attributed to Mr. Howard or Howard Law. Thus, the bankruptcy court entered judgment in favor of both Mr. Howard and Howard Law.

### 4. EAJA Fees

Following trial, Mr. Howard moved for an EAJA fee award in the *Roberts* case, and both Mr. Howard and Howard Law moved for an EAJA fee award in the *Stites* and *Arthur* cases. The bankruptcy court denied the motions, finding that the government's position was substantially justified. ER 1–21.

### STANDARDS

A district court reviews a bankruptcy court order denying EAJA fees for an abuse of discretion. *Pierce v. Underwood*, 487 U.S. 552, 562–63 (1988); *In re Yochum*, 89 F.3d 661, 670 (9th Cir. 1996). An abuse of discretion will be found if the bankruptcy court "based its decision

on an erroneous legal conclusion or a clearly erroneous finding of fact." *Oregon Envtl. Council v. Kunzman*, 817 F.2d 484, 496 (9th Cir. 1987). This is a "highly deferential standard." *Gonzalez v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005) (quoting *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1230 (9th Cir. 1990)). The court "cannot substitute its 'view of what constitutes substantial justification for that of the [bankruptcy] court'; rather, the review 'is limited to assuring that the [bankruptcy] court's determination has a basis in reason.'" *Id.*

The EAJA authorizes the payment of attorney's fees to a prevailing party in an action against the United States, unless the government shows that its position in the underlying litigation "was substantially justified." 28 U.S.C. § 2412(d)(1)(A). As described by the Ninth Circuit,

> [t]he test for whether the government is substantially justified is one of reasonableness. Substantially justified does not mean justified to a high degree, but rather justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person. Put another way, substantially justified means there is a dispute over which reasonable minds could differ.

*Gonzalez*, 408 F.3d at 618 (citations omitted). A court first looks to objective indicia, such as the stage of proceedings at which the merits were decided, the views of other courts on the merits, and the terms of settlement agreements. *Id.* "When objective indicia do not provide a conclusive answer, the court proceeds to the merits of the government's litigating position." *Id.*

When determining whether the government's litigating position was substantially justified, "only one threshold determination for the entire civil action is to be made." *Comm'r, INS v. Jean,* 496 U.S. 154, 159 (1990) ("the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items."). In *Ibrahim v. U.S. Department of Homeland Security*, the Ninth Circuit explained that "Congress clearly contemplated the denial of attorneys' fees even where some of the litigation conduct was

unjustified when it used the qualifying term 'substantial rather than 'total' or 'complete.'" 912 F.3d 1147, 1169 n.16 (9th Cir. 2019) (citations omitted). Thus, "[t]he test is an inclusive one; we consider whether the government's position 'as a whole' has 'a reasonable basis in both law and fact.'" *Id.* 1168 (9th Cir. 2019) (quoting *Gutierrez v. Barhnart*, 274 F.3d 1255, 1258, 1261 (9th Cir. 2001)).[7]

## DISCUSSION

As discussed above, the bankruptcy court entered judgment against Howard Law in the *Roberts* action and in favor of Mr. Howard and Howard Law in the *Stites* and *Arthur* actions. However, the bankruptcy court found that the UST was substantially justified in its litigating position and therefore declined to award EAJA fees in each case. Looking to both the objective indicia and the merits of the UST's position, the Court finds that the bankruptcy court did not abuse its discretion in declining to award EAJA fees.

### 1. Objective Indicia

The Court finds the objective indicia relevant but not conclusive to its analysis. First, each case was tried on the merits after surviving a motion for summary judgment.[8] SER 11–25, 202–12, 235–52; *see also United States v. Thouvenot Wade & Moerschen, Inc.*, 596 F.3d 378, 382 (7th Cir. 2010) ("[A] case that is allowed to go all the way to trial is likely to be a toss up."); *United States v. Pecore*, 664 F.3d 1125, 1135 (7th Cir. 2011) ("[D]efendants ignore the

---

[7] Howard Defendants raise of number of objections to the standards applied by the bankruptcy court. For example, they argue the bankruptcy court erred by failing to apply the "factors" discussed in *United States v. $16,500 in U.S. Currency*, 48 F. Supp. 2d 1268, 1275 (D. Or. 1999) and that, under *Zimmerman v. Schweiker*, 575 F.Supp. 1436 (E.D.N.Y. 1983), the Court should ask (1) whether the UST's position on "*each element*" of the claim is justified and (2) whether "private counsel would have probably advised his client that the matter should not be litigated." Pl. Reply 4 (emphasis in original). These arguments are without merit. Even if these cases were binding on this Court—which they are not—they do not stand for the broad propositions Defendants would assign them. The Court has outlined the relevant standards in this circuit, and finds, as discussed throughout this opinion, that the bankruptcy court correctly applied them.
[8] *In re Stites* also survived a motion to dismiss. SER 1–10.

10 – OPINION & ORDER

objective, although not necessarily conclusive, evidence that the government's complaint

survived both a motion to dismiss and a motion for summary judgment."). Second, while the

case was ultimately tried by Judge Hercher, Judge Dunn was originally assigned the case.[9] After

reviewing the stipulated facts less than two weeks before trial, Judge Dunn indicated that he

would reach a different conclusion from Judge Hercher. Specifically, he stated that Defendants'

conduct was "appalling" and "not acceptable, ever." SER 257–58. He then warned that

Defendants could "count on the fact that if it's tried . . . injunctive relief is going to be granted."

SER 258. While Judge Hercher ultimately found the UST failed to meet its burden in both the

*Stites* and *Arthur* actions, Judge Dunn's statements support the UST's position that, at the very

least, "there is a dispute over which reasonable minds could differ." *See Gonzalez,* 408 F.3d at

618. Lastly, as noted above, co-defendant Graeff—an of-counsel member of Howard Law, local

counsel for Howard Law clients, and engagement counsel with Morgan Drexen—entered a

stipulated judgment in all three cases. SER 116–26.

   Howard Defendants do not identify objective indicia in their favor. They do, however,

take issue with the scope of the pretrial motions, and the motivation behind Judge Dunn's

statements and Mr. Graeff's decision to settle. While Howard Defendants do not cite any legal

support for their arguments, the Court does note that the UST has not identified rulings from

other courts on the merits of its position. *See Pierce*, 487 U.S. at 569 ("[T]he fact that one other

court agreed or disagreed with the Government does not establish whether its position was

substantially justified. . .  Nevertheless, a string of losses can be indicative; and even more so a

string of successes."). The Court therefore turns to the merits of the UST's litigating position.

---

[9] According to the UST, Judge Dunn retired before trial.

11 – OPINION & ORDER

**2.  Merits of the UST's Litigating Position**

Both Howard Law and Mr. Howard were defendants in all three cases. The Court will address each in turn.

**a.  Howard Law**

Howard Law did not appeal the bankruptcy court's finding that, as a non-prevailing party, it was not entitled to attorney's fees in the *Roberts* action. The Court therefore addresses only the *Stites* and *Arthur* actions below.

**i.  *Stites* Action**

In the *Stites* action, the bankruptcy court rejected the UST's allegations that Howard Law misrepresented that (1) it could provide legal assistance to Ms. Stites in Oregon and (2) that it would review and analyze documents to determine her rights and remedies. The bankruptcy court agreed with Howard Law that, standing alone, the UST's argument that Howard Law misrepresented its ability to provide Ms. Stites with legal assistance was not substantially justified; of-counsel attorneys with Howard Law were licensed to practice in Oregon. However, the bankruptcy court found that the UST's arguments that Howard Law misrepresented that an attorney would review her documents and that "the performance of services was so delayed and of such poor quality that it should be viewed as nonperformance" were substantially justified. ER 11. In part, the court agreed that attorney participation was extremely limited and that an excessive amount of time passed before the services were complete. As "only one threshold determination for the entire civil action is to be made," the bankruptcy court found the UST's positions were "closely related in terms of their underlying factual basis as well as the relief requested." ER 12. Thus, the government's position "as a whole" had "a reasonable basis in both law and fact."

The bankruptcy court did not abuse its discretion in finding the UST's position substantially justified. The agreement between Ms. Stites and Howard Law provided that "Attorneys will review and analyze relevant documents to determine your legal rights and remedies pertaining to your debt." SER 335. "Attorneys" was then defined as "The law firm of Howard Nassiri, a Limited Liability Partnership" *Id.* The agreement also promised that "[l]egal counsel will be available to consult with and advise you as to the matters that may arise regarding this representation of you." SER 335.

The UST argued the agreement implicitly promised attorney engagement. According to the UST, only an attorney can "determine legal rights and remedies." *See Jonak v. McDermott, 511 B.R. 586, 601 (D. Minn. 2014)* (affirming bankruptcy court's finding that "the use of the word 'law'" was a misrepresentation where defendant was "not an attorney and [was] unable to provide legal services"). However, Ms. Stites did not speak to an attorney until four years after she signed the agreement, and there is no evidence that an attorney reviewed any document before that time. Given the UST's argument, as well as the use of the term "attorneys" to mean non-attorneys, the bankruptcy court did not abuse its discretion in finding this position reasonable in both law and fact.

The UST's alternative position, that the performance of services was so delayed and of such poor quality that it should be viewed as nonperformance, also had a reasonable basis in law and fact. The bankruptcy court agreed with the UST that "[t]he quality of services performed by a debt-relief agency may sometimes be so low as to justify a finding that the agency failed to perform altogether." ER 278; *see also In re Huffman, 505 B.R. 726, 755–56, 763 (S.D. Miss. 2014)* (national law firm violated section 526 by misrepresenting and failing to provide services, where attorney's review of debtor's file was "perfunctory" and "[n]o attorney . . . ever spoke

with" the debtor). Again, there is no evidence here that any attorney reviewed any paperwork or settlement offer—or even spoke with Ms. Stites—until four years after she signed the retainer agreement. Indeed, as pointed out by the UST, "the first time Ms. Stites spoke to an attorney was *after* Howard Law entered into a settlement on her behalf." Br. of Appellee at 44, ECF 14. Thus, with only one documented contact with an attorney within four years, and only one approved settlement,[10] the UST's argument that this involvement was so delayed and of such poor quality that it should be viewed as nonperformance was supported and reasonable. The bankruptcy court did not abuse its discretion in finding the UST's position in the *Stites* action substantially justified.

### ii. *Arthur* Action

Ms. Arthur signed a retainer agreement with The Law Offices of Erik Graeff and had no independent agreement with Howard Law. Mr. Graeff and the Law Offices of Erik Graeff entered into a stipulated judgment with the UST that imposed both injunctive relief and civil penalties. SER 81–126. The question before the bankruptcy court was therefore whether Howard Law could be held responsible for the actions of Mr. Graeff.

The bankruptcy court found that the UST failed to prove that Howard Law could be held liable for the actions of the Graeff Defendants. Specifically, the court concluded that the UST failed to prove that "Mr. Howard or Howard Law acting through Morgan Drexen were in control of all network members or that network members, particularly Mr. Graeff, acted as implied or apparent agents of Howard Law." ER 13. However, the court also noted a reasonable factual and legal basis for the UST's position. First, while Mr. Graeff was purportedly Ms. Arthur's attorney, Morgan Drexen was responsible for almost every task associated with the representation. For

---

[10] The UST also raises serious concerns about the quality and price of this settlement. *See* Br. of Appellee at 15–18; SER 44–47.

example, Morgan Drexen generally acted as the primary point of contact for clients (who were often unable to reach an attorney), communicated with creditors and negotiated offers, prepared bankruptcy filing documents, and assigned local counsel to work on files belonging to engagement counsel. More specifically, Morgan Drexen assigned Mr. Graeff to work as Ms. Arthur's attorney in the first place, despite his instruction that he was not taking any more bankruptcy clients. SER 53, 281, 454. Thus, while Morgan Drexen sent the retainer agreement, with Mr. Graeff's signature, to Ms. Arthur, this agreement was unauthorized. Indeed, Mr. Graeff testified that he did not know Ms. Arthur was his client until nearly two years after the agreement was signed. SER 53, 281. Presumably, neither he nor any other attorney worked on Ms. Arthur's case during this time. Nevertheless, Morgan Drexen continued to bill Ms. Arthur for services.

The UST also identifies facts that support its position that Morgan Drexen was controlled by Mr. Howard and Howard Law. Mr. Howard created the Howard Law Network and established the Morgan Drexen policies and procedures. SER 466. Mr. Howard and Howard Law also supervised Morgan Drexen. SER 296 (in agreement signed by Mr. Graeff and Mr. Howard, Howard Law "agree[d] to assist in the supervision of the day-to-day services of the Morgan Drexen staff to ensure that the work is performed within professional and/or ethical standards and does not constitute the practice of law[.]"); 273 (in his direct exam at trial, Graeff referenced the agreement's provision and noted that Howard Law was located in the same building as Morgan Drexen); SER 436 (declaration explaining that Mr. Howard moved into the same building as Morgan Drexen in order to supervise its staff and to be "immediately available when questions arose."). Indeed, Howard Law's attorney admitted during an objection at trial that "Morgan Drexen worked under the control of Howard Law." SER 286. Thus, the UST

15 – OPINION & ORDER

reasonably attempted to show that Howard Law controlled Morgan Drexen, and Morgan Drexen

in turn controlled the network and the Arthur representation.

As the bankruptcy court noted, Howard Law also added to the general confusion around

control "by permitting Morgan Drexen to assign its of-counsel members to work on files

belonging to other engagement counsel." ER 268. "Even Graeff admitted that the relationship

among the network members was obscure to him." *Id.* For example, while Ms. Arthur signed an

agreement with Brendan Rennie as "of-counsel" to Mr. Graeff, Mr. Rennie had no agreement

with Graeff Law but did, in fact, have an agreement to act as local counsel with Howard Law.

Thus, while the bankruptcy court ultimately concluded that the UST did not prove that Howard

Defendants controlled Graeff Defendants, "the evidence demonstrated a disconcerting lack of

control or involvement by the ostensibly responsible network attorney," and the UST's reliance

on this confusing network structure to prove Howard Law's connection to the representation was

substantially justified. *See Pecore*, 664 F.3d at 1137 ("[T]here was reasonable confusion

surrounding MTE's invoices, completion maps, and accomplishment memoranda such that either

party's position was 'justified to a degree that could satisfy a reasonable person.'").

Besides this overwhelming confusion—from which a person could infer that Graeff was

not, in fact, a completely separate entity from Howard Law—the UST points to facts that support

its position that Mr. Graeff acted as an implied or apparent agent of Howard Defendants.

Specifically, Mr. Graeff was of-counsel to Howard Law and local counsel for Howard Law's

Oregon clients. Mr. Graeff was also listed on Howard Law's website as an associate of the firm.

When Ms. Arthur received paperwork from Morgan Drexen, ostensibly from Graeff Defendants,

that paperwork included references to an "Of Counsel Network of Regional Attorneys" and

"Howard Law, P.C., Firm of Counsel, Principal Licensed in California" in the letterhead. ER

251. Thus, Morgan Drexen communicated with Mr. Graeff's clients "on letterhead identifying

Howard Law as having a relationship to the representation, even though, in reality, Howard Law

had no such relationship." ER 255.

In sum, the Court cannot conclude that the bankruptcy court based its decision on an

erroneous legal conclusion or clearly erroneous finding of fact. Contrary to Defendants'

argument, the bankruptcy court did not rely on a "complex and confusing" standard—the court

simply noted the facts were complex and confusing in finding the UST's position reasonable in

both law and fact. While Defendants may disagree as to whether these facts were, in fact,

complex, Defendants fail to identify any clearly erroneous conclusions. For example, while

Defendants rely on the bankruptcy court's statement after trial that "Graeff's local-counsel

engagement letter made clear that his own separate clients did not become Howard Law's

clients," ER 266, Defendants ignore Morgan Drexen's role in the representation, the fact that

Morgan Drexen communicated on Mr. Graeff's behalf with letterhead that referenced Howard

Law, and Mr. Graeff's appearance on Howard Law's website. Similarly, while Defendants

appear to argue the UST should have relied on Mr. Howard's deposition in which he denied any

involvement with Mr. Graeff's cases, they again fail to acknowledge contrary facts or identify

caselaw that suggests the UST was required to accept these statements in pursuing the case at

issue. Thus, the bankruptcy court did not abuse its discretion in finding the UST's position as to

Howard Law's role in the *Stites* action reasonable in both law and fact.

### b. Mr. Howard

As discussed above, the UST charged Mr. Howard and Howard Law with violations of

the U.S. Bankruptcy Code. While the bankruptcy court entered judgment in favor of Mr. Howard

in all three cases, it concluded that the UST's positions were again substantially justified. Mr. Howard challenges this conclusion in all three cases.

First, in the *Roberts* case, the bankruptcy court found that *both* Howard Law and Mr. Howard violated 11 U.S.C. § 526(a)(3) by misrepresenting who would act as Ms. Roberts' bankruptcy attorney.  ER 274–76, 290. While the court imposed a sanction against Howard Law, it did not impose a sanction against Mr. Howard "only because the UST was unable to connect this violation to a pattern and practice of other violations." ER 15. This does not change the fact that Mr. Howard violated § 526(a)(3). The UST's position as to Mr. Howard's participation in the *Roberts* case was therefore substantially justified on this ground alone.

Second, the UST raised a number of additional theories in all three cases related to Mr. Howard's role as the principal and sole shareholder of Howard Law. While the bankruptcy court ultimately rejected each theory, it found that because "the corporate behavior at issue was a mode of doing business, rather than a discrete event," it was reasonable for the UST to assume it could prove a connection between that mode of business and "the approval or other involvement" by the corporation's principal. ER 12. The Court agrees. It also notes that not only was Mr. Howard the principal and sole shareholder of Howard Law, but he created the Howard Law Network, established the Morgan Drexen policies and procedures, supervised Morgan Drexen staff members, and signed various pieces of communication, including the Stites retainer agreement. SER 466, 467, 482, 338. In sum, a reasonable person could conclude that Mr. Howard was either directly involved in the conduct at issue or indirectly liable for the actions of Howard Law. Thus, because the government was substantially justified in pursuing the actions against Howard Law, the UST was also justified in pursuing the actions against Mr. Howard. The bankruptcy court did not abuse its discretion in denying attorney's fees under EAJA.

18 – OPINION & ORDER

## CONCLUSION

The bankruptcy court did not abuse its discretion in finding the UST's litigating position

substantially justified. The Court therefore affirms the bankruptcy court's order denying

Defendants' request for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28

U.S.C. § 2412.

IT IS SO ORDERED.


Dated:   February 16, 2020                    .


                                        _____
                                        MARCO A. HERNÁNDEZ
                                        United States District Judge

19 – OPINION & ORDER